**Lewis Roca Rothgerber Christie LLP**
201 East Washington Street, Suite 1200
Phoenix, AZ 85004-2595

**Steven J. Hulsman** (State Bar No. 010929)
Direct Dial: 602.262.5313
Direct Fax: 602.734.3769
Email: shulsman@lrrlaw.com

**Jared L. Sutton** (State Bar No. 028887)
Direct Dial: 602.262.0259
Direct Fax: 602.734.3924
E-mail: jsutton@lrrc.com

**The Butler Law Firm**
3800 North Central Avenue, Suite 810
Phoenix, Arizona 85012-3338

**Everett S. Butler** (SBN 018262)
**Matthew D. Williams** (SBN 026404)
Telephone: (602) 288-0588
Facsimile: (602) 288-0587
ebutler@butlerlawaz.com
mwilliams@butlerlawaz.com

*Attorneys for Plaintiff/Counterdefendant Karen Cosgrove*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| KAREN COSGROVE, a single person,<br><br>    Plaintiff/Counterdefendant,<br><br>vs.<br><br>NATIONAL FIRE & MARINE INSURANCE COMPANY, a foreign insurer,<br><br>    Defendant/Counterplaintiff. | No. 2:14-cv-02229-PHX-HRH<br><br>**PLAINTIFF'S REPLY SUPPORTING PARTIAL SUMMARY JUDGMENT MOTION RE ESTOPPED COVERAGE DEFENSES (*PARSONS*)** |

National Fire leaves the following relevant facts undisputed:

- National Fire hired Righi to defend Mitzel under a reservation of rights. Mitzel had no voice in the selection of counsel.

- Righi obtained information from Mitzel, pursuant to the attorney-client relationship, about Mitzel's use of subcontractors and lack of agreements.

- Righi knew of the reservation of rights, and knew the information Mitzel provided him could defeat coverage, much to Mitzel's detriment.

- Righi nonetheless shared Mitzel's information with National Fire, without obtaining informed consent from Mitzel.

- National Fire did no coverage investigation of its own, despite admitting its obligation to do so.

- Instead, it used Mitzel's information, received from Righi, to determine it could likely defeat coverage. For that reason, it denied reasonable settlement offers that, if accepted, would have protected Mitzel.

- National Fire, in this case, denies coverage on that same basis.

100306279_1

Those undisputed facts compel partial summary judgment for Cosgrove under the *Parsons* authority discussed in our Motion. The information leading National Fire to its belief that the Subcontractor Exclusion defeated coverage was confidential in Righi's hands and harmful to Mitzel's interests if shared with National Fire. *Parsons* therefore prevents National Fire from relying on that exclusion to deny coverage.[1]

National Fire, rather than contending that a disputed fact issue exists, responds with narrow interpretations of *Parsons* and the attorney-client privilege in Arizona. It contends that an insurer, after issuing a reservation of rights, can rely on the lawyer it hires to defend its insured to provide it with all the coverage facts it could theoretically discover if it did its own independent investigation. It can then rely on that information to deny coverage or, as occurred here, refuse to settle because it thinks it can defeat coverage in subsequent litigation. This is contrary to Arizona law, retreats dangerously from the protections provided by *Parsons*, and should be rejected.

*Parsons* is designed to protect the attorney-client relationship in a context (the so-called tripartite relationship) where the defense attorney, regularly hired by the insurer, has a financial incentive to breach the privilege in reporting to the insurer. To guard the privilege and discourage its breach, *Parsons* prohibits insurers from denying coverage (or refusing to settle) based on information received from defense counsel, and finds insurers to have waived coverage defenses formed based on that information.

National Fire misapprehends the nature of *Parsons*' confidentiality requirement. *Parsons* does not require the information to be independently "confidential," such as the medical or school information at issue in that case. Instead, the information must have been obtained via the attorney-client relationship, thus achieving "confidential" status that prevents disclosure absent informed consent. Here, Righi obtained information in the course of representing Mitzel that was harmful to Mitzel's interests if disclosed to National Fire. Righi did not obtain consent to disclose the information

---

[1] National Fire suggests, without specifics, that it has other coverage defenses. In any event, Cosgrove has demonstrated, in response to National Fire's summary judgment motion, that coverage exists here despite the Subcontractor's Exclusion. (Doc. 161.)

to National Fire. The information was therefore confidential under *Parsons*.

It makes no difference whether the information eventually became public. Even if it was "public" at the time Righi disclosed it to National Fire, it was still confidential within the meaning of *Parsons* because it was harmful to Mitzel's interest. Indeed, the information in *Parsons* was itself revealed in discovery. And here, Righi disclosed the information to National Fire a full nine months before National Fire could have obtained it from the public record. National Fire admits it did no independent investigation, so it would not have learned of the information unless it was provided directly by Righi. That National Fire could have found the information if it did such an investigation, as could have the insurer in *Parsons*, did not permit Righi to shortcut the process by breaching the attorney-client privilege.

National Fire's fear that the sky will fall if Cosgrove's motion is granted is just wrong. Cosgrove is not asking the Court to hold that an insurer-appointed lawyer can never disclose what he learns to the insurer. But Cosgrove is asking the Court to hold – consistent with *Parsons* – that an insurer-appointed lawyer cannot share information with the insurer that is affirmatively harmful to the insured's interests without first obtaining informed consent (which the insured would almost certainly not provide, if he understood the insurer could use it against him).

Conversely, National Fire's narrow interpretation of *Parsons* is dangerous. If the defense attorney can report everything the client provides to the insurer, which in turn can use that information to deny coverage, this permits breach of the attorney-client privilege with impunity and discourages candid client-to-attorney disclosures.

## I. BECAUSE RIGHI LEARNED ABOUT THE INFORMATION VIA THE ATTORNEY-CLIENT RELATIONSHIP, IT WAS CONFIDENTIAL.

A fundamental flaw in National Fire's position is its assumption that certain information an attorney obtains from his client in the course of the representation is not confidential. That is wrong. Any such information is confidential unless the client allows disclosure – particularly if the information is harmful to the client's interests.

Under Arizona's Ethical Rule 1.6, which *Parsons* relied on, "[a] lawyer **shall not reveal information relating to the representation of a client** unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation," or the disclosure is otherwise permitted or required by the ethical rules. Ariz. R. Prof. Conduct 1.6(a) (emphasis added). As the Arizona Supreme Court has explained, ER 1.6 is "much broader than the attorney-client privilege" because it "protects **all information** relating to the representation against even non-compulsory disclosure." *Samaritan Found. v. Goodfarb*, 176 Ariz. 497, 506, 862 P.2d 870, 879 (1993) (emphasis added); *see also* Ariz. R. Prof. Conduct 1.6 cmt. 3 ("The confidentiality rule . . . applies not only to matters communicated in confidence by the client but also to **all information** relating to the representation, whatever its source.") (emphasis added); RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 59 cmt. b (2000) ("RESTATEMENT") ("The fact that information falls outside the attorney-client privilege or work-product immunity does not determine its confidentiality . . . ."). Thus, even if information obtained as a result of an attorney-client relationship is not independently "confidential," it is nonetheless protected from disclosure.

Lawyers are similarly barred from using "information relating to representation of a client to the disadvantage of the client unless the client gives informed consent." Ariz. R. Prof. Conduct 1.8(b); *see also* Ariz. R. Prof. Conduct 1.6 cmt. 4 ("This prohibition also applies to disclosures by a lawyer that do not in themselves reveal protected information but could reasonably lead to the discovery of such information by a third person."). Notably, there is no restriction on the type of information covered by this rule, so long as it "relat[es] to the representation of a client." *Parsons* is nothing more than the mirror image of this rule, preventing a third-party (*e.g.*, the insurer evaluating coverage) from benefitting from a lawyer's breach of the ethical duties owed to his client. *Parsons v. Cont'l Nat'l Am. Grp.*, 113 Ariz. 223, 226, 550 P.2d 94, 97 (1976) (citing a lawyer's unconditional duty of loyalty and explaining that, when the duty is breached and the lawyer shares detrimental information with the

100306279_1                                4

insurer, it "is so contrary to public policy that the insurance company is estopped as a matter of law from disclaiming liability under an exclusionary clause in the policy").

Here, it is undisputed Righi learned the facts National Fire used for its no-coverage analysis from Mitzel. (*See* Doc. 150 at 4:15-20.) While Righi claims he also saw that information in the job file he received from his client, that does not change its character as confidential information related to the representation. RESTATEMENT § 59 cmt. b (confidential client information "covers information gathered from any source, including sources such as third persons whose communications are not protected by the attorney-client privilege"); Douglas R. Richmond, *Lost in the Eternal Triangle of Insurance Defense Ethics*, 9 GEO. J. LEGAL ETHICS 475, 497 (Winter 1996) ("Regardless of whether defense counsel discovers the information or whether the insured shares confidential information, defense counsel are generally barred from sharing the information with the insurer."). There is no question that any information Mitzel gave Righi about the Cosgrove job "related" to Righi's representation of Mitzel, because Righi was hired to defend against claims arising out of that very job. The information was confidential within the attorney-client relationship. *See Goodfarb*, 176 Ariz. at 506, 862 P.2d at 879; Ariz. R. Prof. Conduct 1.6(a). Righi's disclosure to National Fire – with National Fire likely to use it for the Subcontractor Exclusion – therefore violated Righi's duty of loyalty to Mitzel, *see* Ariz. R. Prof. Conduct 1.8 cmt. 5, and triggered the estoppel rules established by *Parsons*.[2]

In light of *Goodfarb*, the Restatement, and the comments to Rule 1.6, National Fire is wrong to limit *Parsons* as requiring anything beyond disclosure of facts obtained in the lawyer's representation of the client. While the *Parsons* opinion called

---

[2] Even if defense counsel's reporting to the insurer is innocent or naive, *Parsons* prohibits the insurer from denying coverage based on that information. Insurers have a good faith duty to do their own independent investigation. *See Sobieski v. Am. Standard Ins. Co. of Wisc.*, 240 Ariz. 459, 462, 382 P.3d 89, 92 (App. 2016) (finding bad faith for insurer's failure to adequately investigate); *Lennar Corp. v. Transamerica Ins. Co.*, 227 Ariz. 238, 247, 256 P.3d 635, 644 (App. 2011) (law requires insurers "to reasonably investigate" claims). Insurers, therefore, can protect their own interests, without defense counsel's help.

certain school records "confidential," the insurer undoubtedly could have obtained that file through its own investigation.[3]  The point of *Parsons* is not the private nature of the record, but rather that the information was confidential because it was obtained by the lawyer in representing the insured, which prevented the lawyer from disclosing it to the insured's detriment.  *Parsons*, 113 Ariz. at 228, 550 P.2d at 99.  To that point, *Parsons* says estoppel applies when the insurer "uses the confidential **relationship** between an attorney and a client to gather information so as to deny the insured coverage."  *Id.* (emphasis added).  That is what happened here: Righi obtained the subcontractor information because he represented Mitzel, then turned that information over to National Fire, which used it against Mitzel in refusing to protect him by settling Cosgrove's claim.  *Parsons* therefore prohibits National Fire from using that information to deny coverage.

National Fire's reliance on *American Family Mutual Insurance. Co. v. Clancy*, No. CV-09-01077-PHX-ROS, 2011 WL 13077359 (D. Ariz. Mar. 9, 2011), is misplaced.  The key distinguishing fact is that the *Clancy* lawyer "d[id] not reveal confidential information he obtained from his clients through the attorney-client relationship **that [the insurer] could use to deny coverage**."  *Id.* at *5 (emphasis added).  That is not the case here.  The bottom line is that Righi disclosed his client's confidential information to National Fire and National Fire used that information to Mitzel's detriment.  Under *Parsons*, nothing more is required for estoppel to apply.

## II. SUBSEQUENT DISCLOSURE DOES NOT CHANGE THE CHARACTER OF THE CONFIDENTIAL INFORMATION.

National Fire's effort to escape the reach of *Parsons* based on later disclosure of the subject information falls short for three separate reasons.

First, Righi, absent informed consent, was obligated not to disclose information he learned in the course of representing Mitzel regardless of whether that information

---

[3] The insurer, for example, could have requested the insured to disclose the records as part of his duty to cooperate under the policy.  *See also* discussion on p. 8 in Section II.

100306279_1                                       6

might be later disclosed.  Unlike the rule for former clients, the rule applicable to current clients contains no limitation allowing a lawyer to use "generally known" information to the client's detriment.  *Compare* Ariz. R. Prof. Conduct 1.8(b) ("A lawyer shall not use information relating to representation of a client to the disadvantage of the client unless the client gives informed consent, except as permitted or required by these Rules."); *with* Ariz. R. Prof. Conduct 1.9(c) ("A lawyer who has formerly represented a client in a matter shall not thereafter . . . use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, **or when the information has become generally known**.") (emphasis added).  The Restatement explains this difference in language is intentional – the use of a current client's information to the client's detriment "would be impermissible on the broad ground that a lawyer may not use even publicly known information to the detriment of a current client." RESTATEMENT § 59 rptr.'s note to cmt. b (internal cross-references omitted).  When Righi disclosed information about the subcontractors to National Fire, to the disadvantage of Mitzel, Mitzel was a current client.  The information was therefore confidential regardless of whether it later became "generally known."

Second, when Righi disclosed the information to National Fire, it was not public.  Righi sent his first letter disclosing the subcontractor information to National Fire on June 30, 2009, shortly after his retention.  (Doc. 147-1 at ECF 18-20.)  National Fire promptly issued its reservation of rights letter, citing the Subcontractor Exclusion, on July 10, 2009 – less than two weeks later.  (*Id.* at ECF 22, 33.)  It wasn't until September 10, 2009, two months later, that Mitzel issued his first disclosure statement with information about subcontractors; but that document was only served on counsel in the lawsuit and was not filed in the public record.  (Ex. 1.)  It was almost a year later, on April 28, 2010, when a document first made it into the public record with information about subcontractors (purportedly) doing all the work – and even then, it wasn't explicit.  (Ex. 2.)  Per National Fire's response, it could only be inferred that

subcontractors did the work because Righi included no claim for express indemnity in the third-party complaints. (Doc. 150, at 12:4-6, 15:9-13.) National Fire also cites Mitzel's deposition, but there is no evidence the deposition, occurring in 2011, was ever provided to National Fire or filed in the public record. (Ex. 3.)

Even if we assume National Fire could have obtained the information from the public record at some relevant time, it is undisputed that National Fire did not conduct any independent investigation. (Ex. 4, Rohling Depo. at 113:8-25.) Thus, the only way National Fire could have obtained the subcontractor information is if Righi provided it. *See Parsons*, 113 Ariz. at 227, 550 P.2d at 98 ("That the [insurance] company has not satisfied itself concerning coverage by its other, independent methods, is no compelling reason why defense counsel should be asked to betray the trust reposed in him by the insured.").

Third, even *Parsons*' facts would fail National Fire's stringent test. The defense attorney there "obtained privileged and confidential information from [the insured-client]'s confidential file at the Paso Robles School for Boys, **during the discovery process** and, more importantly, from the attorney-client relationship." *Parsons*, 113 Ariz. at 226, 550 P.2d at 97 (emphasis added). Because the *Parsons* information was available "during the discovery process," the insurer could have found it with its own investigation. By National Fire's reckoning, it would no longer be confidential and therefore could be transmitted by defense counsel to the insurer, and used by the insurer to deny coverage. As *Parsons* itself tells us, not so.

In sum, regardless of whether the subcontractor information eventually became public, National Fire learned about it from Mitzel's attorney, and did so long before the information was publicly disclosed. National Fire relied on the information when it invoked the Subcontractor Exclusion in its very first reservation of rights letter, and thereafter, throughout the litigation and to this date. National Fire is therefore prohibited from denying coverage on the basis of that exclusion.

### III. THE SKY IS NOT FALLING; TO THE CONTRARY, IT IS NATIONAL FIRE'S POSITION THAT IS DANGEROUS.

National Fire contends that granting Cosgrove's motion will change the insurance industry forever because appointed counsel will never be able to provide any information to the insurer. This prophecy is an unsubstantiated fear tactic.

Under Rule 1.6(a), there is nothing wrong with insurer-appointed counsel sharing information with an insurer about the representation, so long as it is expressly or impliedly authorized by the client (the insured). Ariz. R. Prof. Conduct 1.6(a). Mitzel, undisputedly, never authorized Righi to share the subcontractor information with National Fire, with the knowledge that National Fire could use it against him. (Doc. 147-3 at ECF 179:4-12 (Righi admits he never obtained Mitzel's oral or written consent to disclose information to National Fire).)

Assuming National Fire is relying on implied authority, it fails to consider that Righi's disclosure of subcontractor information could not have been impliedly authorized because it was detrimental to Mitzel's interests. *See Parsons*, 113 Ariz. at 227, 550 P.2d at 98 ("The attorney in the instant case should have notified CNA that he could no longer represent them when he obtained **any information (as a result of his attorney-client relationship with Michael) that could possibly be detrimental to Michael's interests** under the coverage of the policy.") (emphasis added). Righi is an experienced construction defect defense lawyer, (Doc. 147-3 at ECF 162:14-21), he had worked for National Fire for years, (*id.* at ECF 162:22-163:6), and he knew about the Subcontractor Exclusion (*id.* at ECF 167:2-168:3). His firm even did a written coverage analysis. (Doc. 147-2 at ECF 20-23.) He had every reason to know that disclosure of the subcontractor information to National Fire would affect Mitzel's rights. Any argument that Righi was impliedly authorized to disclose information to National Fire that would trigger the exclusion is therefore implausible on its face.[4]

---

[4] This is true even if, as National Fire claims, it is common practice in construction defect litigation to disclose subcontractor information. (Doc. 150 at 12:18.) First, this type of disclosure only creates a problem where, as here, the information could be used

Nor is there any reason to change the rule, in the construction defect context or otherwise, that an insurer must do its own investigation. Indeed, that is what happened in two of National Fire's primary citations in its coverage motion. (Doc. 140.) In *Mt. Hawley Insurance*, the insurer hired an "independent surveyor" to investigate the facts on which it based its coverage decision. *Mt. Hawley Ins. Co. v. Total Bldg. Sys., Inc.*, No. CV-06-2473-PCT-NVW, 2008 WL 2757076, at *2 (D. Ariz. July 14, 2008). In *NVR*, an affiliate of National Fire had its own adjuster conduct the coverage investigation. *NVR, Inc. v. Nat'l Indem. Co.*, No. L-947-07, 2010 N.J. Super. Unpub. LEXIS 2336, at *20-21 (Aug. 20, 2010) (attached as Ex. 5).

If it were any other way, *Parsons* would have no teeth, and insureds would lose much of its protection. The public policy underlying *Parsons* is to protect the premium-paying insured public from the insidious potential conflicts created by the tripartite relationship – insurers paying defense counsel to defend their insureds in litigation, particularly in cases where coverage may be disputed. *See, e.g.*, Stephen L. Pepper, *Applying the Fundamentals of Lawyers' Ethics to Insurance Defense Practice*, 4 CONN. INS. L.J. 27, 46-47, 56-60, 63, 68, 72 & nn. 35, 76-77, 79-80 (1998). In this setting, the insured has no choice in counsel; the insurer commonly assigns a defense lawyer with whom it has a close relationship and who is relying on the insurer for ongoing business. *Parsons* allows an insured to communicate freely with his assigned defense counsel, protects the insured from the lawyer putting financial gain ahead of ethical duty, and precludes the insurer from using information relevant to coverage that the lawyer intentionally or inadvertently provides. *Id.* Without that protection, an insured would be hesitant to share facts with its own lawyer, thereby undercutting the foundation of the lawyer-client relationship. If, as *Parsons* provides, the insurer cannot use information from appointed defense counsel to deny coverage, there are no perverse incentives to blur the boundaries in the tri-partite relationship. *Id.*; *see also*

---

to exclude coverage. Second, none of the rules making this information confidential carve out exceptions for construction defect litigation. Third, just because Righi says this is common practice doesn't make it so and certainly doesn't make it right.

Doc. 147-3 at ECF 176:10-16 (Righi claiming, as insurer-appointed counsel, he walks a "tightrope" because he owes duties to both insurer and insured).

National Fire proposes to emasculate this public policy by limiting *Parsons* to its facts – private medical or school information – or excluding it altogether from construction defect cases. If this view prevails, appointed counsel will be licensed to provide insurers with any information obtained from the insured-clients, no matter how harmful to the insureds' coverage, on the pretense that the insurers would learn it eventually anyway. Insurers will be relieved of their duty to conduct independent coverage investigations, and the insured public would be disserved. The *Parsons* rule is intended to prevent this sort of disloyal behavior that ignores the fundamental precept of insurer-appointed counsel: the client is the insured, not the insurer. *See Parsons*, 113 Ariz. at 227, 550 P.2d at 98 ("Although the opinions of the Committee state that the lawyer represents both the insurer and insured, [i]t is clear that his highest duty is to the insured and that the lawyer cannot be used as an agent of the company to supply information detrimental to the insured.").

## IV. CONCLUSION

National Fire misapprehends and eviscerates the protection provided by *Parsons*. The focus is on the duties of loyalty and confidentiality lawyers owe their clients and the duties of good faith and independent investigation insurers owe their insureds – not whether information the lawyer learns and conveys to the insurer is private or otherwise independently "confidential." Relying on these fundamental ethical and insurance law principles, *Parsons* prevents an insurer-appointed lawyer from disclosing information to the insurer if that information is detrimental to the insured's interests and the client does not provide informed consent to disclose. That is what undisputedly happened here. National Fire is therefore estopped from relying on the Subcontractor Exclusion as a coverage defense.

DATED this 31st day of January, 2017.

1
2
3
4
5

LEWIS ROCA ROTHGERBER CHRISTIE, LLP


By */s/ Jared L. Sutton*
    Steven J. Hulsman
    Jared L. Sutton
*Attorneys for Plaintiff/Counterdefendant*

100306279_1

12

CERTIFICATE OF SERVICE

I hereby certify that on January 31, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants.

*/s/ May Livingston*